**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-21583-Civ-WILLIAMS/TORRES

MSPA CLAIMS 1, LLC,

      Plaintiff,

v.

COVINGTON SPECIALTY
INSURANCE COMPANY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

      This matter is before the Court on Covington Specialty Insurance Company's

("Defendant" or "Covington") motion to dismiss MSPA Claims 1, LLC's ("Plaintiff

or "MSPA") amended complaint and to strike class action allegations.  [D.E. 61].

Plaintiff responded to Defendant's motion on February 18, 2020 [D.E. 66] to which

Defendant replied on February 25, 2020.  [D.E. 70].  Therefore, Defendant's motion

is now ripe for disposition.  After careful consideration of the motion, response,

reply, relevant authority, and for the reasons discussed below, Defendant's motion

to dismiss should be **DENIED**.[1]

---

[1]    On February 27, 2020, the Honorable Kathleen Williams referred
Defendant's motion to the undersigned Magistrate Judge for disposition.  [D.E. 71].

1

## I.  BACKGROUND

On September 13, 2018, Plaintiff filed a two-count complaint in the District Court of New Hampshire seeking relief under the Medicare Secondary Payer Act (the "MSP Act"), 24 U.S.C. § 1395(y)(b)(3)(A), alleging that Defendant failed to reimburse a Medicare Advantage Organization ("MAOs") for medical payments made on behalf of an enrollee, P.M.[2]  The District Court of New Hampshire granted Covington's motion to transfer venue on March 21, 2019 and ordered that this case be transferred to the District Court for the Southern District of Florida.  [D.E. 28].

Plaintiff is an assignee of subrogated claims, recovery, and reimbursement rights from Florida Healthcare Plus, LLC ("FHCP").[3]  FHCP is an MAO that contracted with the Centers for Medicare and Medicaid Services ("CMS") to provide Medicare benefits to eligible members enrolled in FHCP's Medicare Advantage health plan under Part C of the Medicare Act.  Plan members are referred to as "enrollees," and FHCP served the needs of its enrollees through its Medicare and managed care programs, delivered through its network of physicians and health care professionals.

According to the amended complaint and to demonstrate Defendant's systemic violations of the MSP Act, Plaintiff alleges that P.M. was a member of a Medicare Advantage Plan managed by FHCP at the time of an accident.  FHCP

---

[2]     P.M. was injured in an accident on February 25, 2014.  At the time of the injuries, P.M. was receiving Medicare benefits from FHCP and medical treatments related to those injuries between February 26, 2014 and November 3, 2014.

[3]     Plaintiff is a firm that obtains MSP Act claims and brings them on behalf of MAOs.

paid for P.M.'s medical expenses, totaling $5,503, pursuant to its contract with CMS. The complaint then alleges that Defendant was the primary payer for P.M.'s injuries as a "no-fault" insurer. But, Defendant failed to pay for the medical services, and failed to reimburse FHCP for the payments it made on behalf of P.M. to satisfy his medical bills.

FHCP subsequently entered into an agreement (the "La Ley Agreement") to assign its MSP Act claims to La Ley Recovery Systems, Inc. ("La Ley") on April 15, 2014. This assigned "all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any [of] its members and/or plan participants." [D.E. 55-2 at § 1.1]. Then, on February 20, 2015, La Ley entered into an agreement with Plaintiff (the "MSPA Agreement") to assign all of the MSP claims that it acquired pursuant to the previous assignment. Accordingly, Plaintiff seeks to recover damages under 42 U.S.C. § 1395y(b)(3)(A) and 42 C.F.R. § 411.24(e) for unpaid medical expenses and other reimbursements.

## II.   APPLICABLE PRINCIPLES AND LAW

### A.   *Motion to Dismiss Pursuant to 12(b)(1)*

To the extent Defendant challenges Plaintiff's standing to pursue FHCP's claims, Federal Rule of Civil Procedure 12(b)(1) applies. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "'Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Id.* (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42

(11th Cir. 1991)).  "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

"A facial attack on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond, Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  To survive a facial challenge to standing, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *McElmurray*, 501 F.3d at 1251 (citations and internal quotation marks omitted).  "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Streib v. United States*, 2013 WL 4401036, at *2 (S.D. Fla. Aug. 12, 2013) (quoting *Lawrence*, 919 F.2d at 1529).  "[N]o presumptive truthfulness

attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* In short, "when a party mounts a factual attack, a district court is free to independently weigh facts, and may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56." *Int'l Broth. of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1343 (S.D. Fla. 2013) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### B.   *Motion to Dismiss Pursuant to 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

Defendant presents three arguments in support of its motion to dismiss. First, Defendant claims that Plaintiff's amended complaint should be dismissed because Plaintiff lacks standing to sue for unpaid medical expenses on behalf of FHCP. Second, Defendant contends that both counts in Plaintiff's amended complaint fail to state a claim and that dismissal under Rule 12(b)(6) is required. And finally, Defendant argues that this case is not proper for class action treatment because Plaintiff cannot show that the class is ascertainable or adequately defined.

For these reasons, Defendant concludes that Plaintiff's amended complaint should be dismissed.

### A.    *General Principles of the MSP Act*

To inform the analysis that follows, we must consider the general principles of the MSP Act, its underlying purposes, and how it operates in the recovery of medical expenses for enrollees.  In 1980, Congress passed the MSP Act to reduce the costs of Medicare.  *See Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306 (11th Cir. 2006).  Prior to the law's passage, Medicare often acted as a primary insurer – meaning Medicare paid for enrollees' medical expenses, even when an enrollee carried other insurance that covered the same costs, or when a third party had an obligation to pay for them.  The MSP Act changed that relationship so that Medicare acts as a secondary payer.  "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay."  *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002).

The MSP Act prohibits Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."  42 U.S.C. § 1395y(b)(2)(A)(ii).  If, however, a primary payer—in the parlance of the statute, a "primary plan"—"has not made or cannot reasonably be expected to make payment with respect to the item or service

promptly," Medicare may make a payment on the enrollee's behalf, conditioned on reimbursement from the primary plan. *Id*. § 1395y(b)(2)(B)(i); *see also Cochran*, 291 F.3d at 777 ("In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly.").

Although the MSP Act uses the term "primary plan" to describe entities with a primary responsibility to pay, that term includes more than health insurance plans. The statute defines a "primary plan" as "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance[.]" 42 U.S.C. § 1395y(b)(2)(A).[4] The mechanics of the reimbursement process are also provided in the statute. The law requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). To facilitate recovery of these payments, the law provides for a right of action by the United States, for double damages, against "any or all entities that are or were required or responsible" to make payment under a primary plan. *See id*. § 1395y(b)(2)(B)(iii). And in addition to the right of action by the United States, Congress created a private cause of action against a primary plan that fails to provide for primary payment. *See id*. § 1395y(b)(3)(A). Like the cause of action

---

[4]    In 2003, Congress expanded the definition of the term "primary plan" to specify that "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk." 42 U.S.C. § 1395y(b)(2)(A).

afforded to the United States, the private cause of action also permits the plaintiff to recover double damages. *Id.* In light of this framework, we turn to Defendant's motion to dismiss.

### B. *Whether Plaintiff has Standing*

The first question is whether Plaintiff has standing to sue Defendant as an assignee of FHCP. Standing is fundamental because it ensures that the federal courts stay within their constitutional role in resolving cases and controversies between parties. *See, e.g.*, U.S. Const. art. III, § 2; *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). "[C]ourts 'have an independent obligation to determine whether subject-matter jurisdiction exists,' even if no party raises the issue, and if the court determines that subject matter jurisdiction is lacking, it must dismiss the entire case." *In re Trusted Net Media*, 550 F.3d 1035, 1042 (11th Cir. 2008) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006)).

"To have a case or controversy, a litigant must establish that he has standing," which requires proof of three elements. *See United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). The Supreme Court requires "(1) that the plaintiff have suffered an 'injury in fact'—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Bennet v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan*, 504 U.S. at 560).   Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  If a case proceeds to trial, the facts necessary to establish standing "must be supported adequately by the evidence adduced at trial." *Id.* (internal quotation marks omitted).

### 1. *Whether Plaintiff Failed to Allege that FHCP Had Standing*

To begin, Defendant argues that Plaintiff's amended complaint falls short because Plaintiff fails to allege that its alleged assignor, FHCP, has standing. Defendant claims that Plaintiff's standing derives from a series of assignments but that Plaintiff fails to allege how those assignments confer standing.  [D.E. 55, Ex. B].  Instead, Defendant contends that Plaintiff merely references the assignments in the amended complaint and then concludes that Plaintiff is an assignee of FHCP. Defendant also states that "numerous other courts in this District have noted [that] FHCP is not an MAO or a direct healthcare provider but, rather, "a now-defunct health maintenance organization," and that – even if the alleged assignments are valid – FHCP itself still lacks standing. *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 322 F. Supp. 3d 1273, 1281 (S.D. Fla. 2018) (quoting *MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342 (S.D. Fla. 2016)).

Defendant's argument is unpersuasive, in large part, because the Eleventh Circuit has determined – contrary to the prior district court decisions that Defendant relies upon – that an assignment of claims from FHCP is valid and confers standing to assert claims under the MSP Act.  In *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016), the Eleventh Circuit considered the issue of standing in seven consolidated cases with similar facts to this one.  There, the plaintiffs were firms that obtained claims for reimbursement, while the defendants were insurance companies offering personal injury no-fault insurance in Florida.  *See id.* at 1356.  The persons were injured while enrolled in a Medicare Advantage Plan and, despite defendants' arguments, the Eleventh Circuit assumed as fact that "FHCP assigned its claims under the MSP Act, and Plaintiffs are the current assignees."  *Id.*

Defendant contends that Plaintiff lacks standing because FHCP is not a MAO but a defunct health maintenance organization.  Yet, Defendant fails to explain how that changes anything when the Eleventh Circuit has previously found that an assignment of claims from FHCP to MSPA is valid and that it confers standing to assert these claims under the MSP Act.  This is also not even considering the Eleventh Circuit's more recent decision in *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, where the court also found, for a second time, that "Florida Healthcare Plus, Inc. ('FHCP') is an MAO" and that it qualifies as an assignor under the statute.  918 F.3d 1312, 1317 (11th Cir. 2019).

In an attempt to sidestep these cases, Defendant claims that Plaintiff's amended complaint should be dismissed because Plaintiff fails to allege how the two agreements attached as Exhibit B to the amended complaint establish standing. Defendant's argument is, at best, unclear because the agreements show that, on April 15, 2015, FHCP entered into an agreement with La Ley. FHCP assigned, in this agreement, all of its "rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any [of] its members and/or plan participants." [D.E. 55-2 at § 1.1]. The agreements then provide that, on February 20, 2015, La Ley and Plaintiff entered into their own agreement to assign Plaintiff all of the claims that La Ley acquired from FHCP. *See id.* at 1.

Defendant suggests that Plaintiff's allegations are somehow inadequate. But, in addition to the underlying agreements, Plaintiff alleges that, as an assignee, Defendant was a primary payer obligated to pay for medical services and that Defendant failed to do so. Defendant maintains that these allegations remain insufficient. But, Defendant fails to specify what else Plaintiff should have alleged. Plaintiff has provided allegations and evidence of the assignments, an injury from Defendant's failure to pay, causation, and redressability. Therefore, without any other clarity as to what else Plaintiff should have alleged, Defendant's motion to dismiss Plaintiff's complaint should be **DENIED** because Defendant's argument is conclusory and unclear as to the reasons for dismissal.

## 2. *Whether FHCP Approved of the Assignments*

Defendant's next argument is that Plaintiff's complaint should be dismissed because Plaintiff did not allege that FHCP approved of the assignment to Plaintiff. Defendant relies primarily on section 1.2 of the La Ley Agreement, where it states that La Ley "may assign the Agreement in whole or in part but the assignee must be approved by the Client[.]"  [D.E. 55-2 at § 1.2].  Defendant claims that, without any allegation or evidence that FHCP approved of the assignment, Plaintiff lacks standing to bring this action.  *See, e.g., MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, 352 F. Supp. 3d 1234, 1239–40 (S.D. Fla. 2018) ("[T]he La Ley Agreement required approval from Florida Healthcare Plus before there could be an assignment of rights to Plaintiff, and since the Receiver controlled Florida Healthcare Plus when the purported assignment to Plaintiff took place, the Plaintiff fails to demonstrate that approval.").

As an assignee, a plaintiff suing under the MSPA "only has standing if it was validly assigned the right to sue to vindicate that injury."  *Tenet Fla., Inc.*, 918 F.3d at 1318 ("*MSPA* only has standing if it was validly assigned the right to sue to vindicate that injury.") (citing *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) ("If a valid assignment confers standing, an invalid assignment defeats standing"); *Allstate Ins. Co.*, 835 F.3d at 1357–58)).   To determine whether Defendant's argument has merit, we must look beyond the allegations of the amended complaint because Defendant has presented a factual

attack on MSPA's standing.  *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013).

Defendant's argument is premised on the chain of assignments that led to Plaintiff filing this lawsuit.  Plaintiff's claim originally belonged to FHCP and then it assigned its claims to La Ley.  In turn, La Ley assigned those claims to MSPA but, between those two assignments, FHCP entered into receivership proceedings and repudiated the assignment to La Ley.  That is, after FHCP's receiver learned of La Ley's assignment to MSPA, FHCP disputed La Ley's right to assign the MSP Act claims.  This is the primary reason district courts in the last few years have held that MSPA lacks standing because of this chain of assignment problem.

However, as the Eleventh Circuit determined in *Tenet*, "things have changed" because, on June 1, 2016, FHCP's receiver entered into a settlement agreement with La Ley that ratified the assignment to La Ley and the assignment to MSPA. *Tenet Fla., Inc.*, 918 F.3d at 1318 ("The settlement fully resolved the MSP Act assignment dispute and confirmed La Ley's assignment of FHCP's claims to MSPA. Tenet does not point to any chain-of-assignment problems arising between that settlement and MSPA filing its amended complaint.") (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275–76 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed.")).  Specifically, the receiver affirmed that:

> [A]s of the execution of the Initial Agreement . . . all rights, title and interest to recover payments made by FHCP on behalf of FHCP members pursuant to various legal theories related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State Subrogation Laws ("Assigned Claims") were and continue to be irrevocably assigned to La Ley.

[D.E. 66-1 at § 2].

The settlement agreement also approved of La Ley's subsequent assignment to Plaintiff:

> The Assigned Claims may be assigned by and among any of the companies collectively referred to herein as "La Ley," and the Receiver acknowledges that any assignment of the rights described hereunder by or among those companies collectively referred to as "La Ley" occurring prior to the execution of this Settlement Agreement shall be valid and enforceable.

*Id.* § 20 (emphasis added).  A Florida state court then approved of the settlement agreement on June 14, 2016.  [D.E. 66-2].

In light of the settlement agreement with the receiver, the state court order approving the agreement, and the Eleventh Circuit's decision in *Tenet* that addressed the same issue, the assignments are valid and confer standing on Plaintiff to pursue these claims against Defendant.  Defendant requests in a footnote that it would appreciate an opportunity to further brief these issues based on the holding in *Tenet*, but Defendant foresaw this problem and failed to address it.  Because Defendant had an opportunity to consider *Tenet* but failed to do so and there is prima facie evidence that FHCP approved of these assignments, Defendant's motion to dismiss Plaintiff's amended complaint on this basis should be **DENIED**.

In supporting its argument that FHCP failed to approve of Plaintiff's assignment, Defendant also mentions in one conclusory sentence that this case is barred under the doctrine of collateral estoppel. [D.E. 61 at 9]. It appears that Defendant is relying upon a prior case in 2016, where a district court determined that Plaintiff lacked standing under the assignments to pursue its claims against Covington. If Defendant wanted to pursue this argument, it should have included a substantive discussion of collateral estoppel and the reasons that the doctrine applies. Yet, Defendant only makes a conclusory assertion and then it leaves it to the Court to make sense of it. We decline to do so because "conclusory arguments are not sufficient to support his motion to dismiss." *J.P. ex rel. Price v. Crews*, WL 1466634, at *6 (M.D. Ala. Apr. 27, 2012); *see also Medina v. United Christian Evangelistic Ass'n*, 2009 WL 653857, at *4 (S.D. Fla. Mar. 10, 2009) (finding that "Defendants' conclusory arguments . . . cannot support a motion to dismiss."). Therefore, to the extent Defendant seeks to dismiss Plaintiff's amended complaint under the doctrine of collateral estoppel, which is an equitable principle ill suited for adjudication on the pleadings in any event, Defendant's motion to dismiss should be **DENIED**.

### 3. *Whether the La Ley Agreement Expired*

Defendant's third argument is that Plaintiff lacks standing because the agreement between FHCP and La Ley was terminated on December 10, 2014 upon the entry of a state court liquidation order and was not otherwise adopted within ninety days of the receiver having actual knowledge of the agreement. Defendant

reasons that, whatever rights Plaintiff claims it obtained from the subsequent assignments, they terminated when La Ley's rights terminated.[5]  *See Crossman v. Fontainebleau Hotel Corp.*, 273 F.2d 720, 725 (5th Cir. 1959) ("An assignee has no greater rights than his assignor; consequently, it cannot be argued that a valid assignment may breathe life into the assigned instrument otherwise invalid.").

The date of the agreement between Lay Ley and FHCP is April 15, 2014 and it states that the assignment is effective for one year following execution:

> The term of this Agreement shall be for one (1) year from the date of execution herewith, with an automatic renewal for an additional one (1) year period unless terminated at any time by the parties with ninety (90) day prior written notification.  La Ley Recovery may assign the Agreement in whole or in part but the assignee must be approved by the Client[.]

[D.E. 55-2 at 6].  Defendant argues that the La Ley Agreement expired prior to La Ley assigning its rights to Plaintiff because it was somehow terminated between the parties.  But, the clause in the Lay Ley Agreement that Defendant relies upon with respect to any written termination is in reference to the possibility of an *automatic renewal* – not the one-year term that was executed on April 15, 2014.  This means that, even if the agreement had been terminated with the required amount of notice, it would have continued at least until April 15, 2015.

Putting that aside, Defendant then claims that the La Ley Agreement was terminated on December 10, 2014 via a state court liquidation order that cancelled

---

[5]   It would have been helpful to the Court if Defendant has presented this argument in a more structured and coherent way.  But, Defendant rushed this section, referenced the state court order, and merely concluded that the agreement between FHCP and La Ley terminated without much context or supporting facts.

all of FHCP's executory contracts within ninety days unless the receiver specifically adopted them:

> All executory contracts to which the Respondent was a party shall be cancelled and stand cancelled unless specifically adopted by the Receiver within ninety (90) days of the date of this Order or from the date of the Receiver's actual knowledge of the existence of such contract, which is later. 'Actual Knowledge' means that Receiver has in its possession a written contract to which the Respondent is a party, and the Receiver has notified the vendor in writing acknowledging the existence of the contract.

[D.E. 66-1 at ¶ 27].   Defendant suggests that the cancellation of all executory contracts within ninety days of the state court order includes the La Ley Agreement and that whatever rights La Ley had at that time must have been terminated.

Defendant's argument is misguided because – even if FHCP's receiver failed to adopt the La Ley Agreement – it remained valid for ninety days after the state court entered the liquidation order on December 10, 2014.  And ninety days after December 10, 2014 was approximately March 10, 2015.  Prior to that date, La Ley's rights as an assignee had already vested and it assigned those same rights to Plaintiff on February 20, 2015.  It is therefore unclear as to how the state court order – which presumably cancelled all of FHCP's executory contracts – reached the La Ley Agreement when La Ley's rights had already vested and it assigned those same rights to Plaintiff before ninety days had passed after the state court's liquidation order.[6]  That is, Defendant has not shown that a termination date with respect to the La Ley Agreement undermines the claims already assigned.  *See MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, 2018 WL 5086623, at *12 (C.D.

---

[6]   There is no argument in the record that FHCP's receiver had actual knowledge of the La Ley Agreement.

Cal. Aug. 13, 2018) ("Defendants cite no persuasive authority for the proposition that a termination clause in an otherwise valid assignment agreement 'nullifies' the assignment."). We are also aware of no authority, and Defendant fails to reference any, that indicates that the termination of an assignment applies retroactively to extinguish vested rights. *See, e.g.*, *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 754 (5th Cir. 1996) ("The Uniform Commercial Code, for example, defines 'termination' as a prospective remedy only, which does not extinguish vested rights."). Therefore, we conclude that Defendant's motion should be **DENIED** because Plaintiff's rights had already vested prior to the termination date of the La Ley Agreement and, if anything, the termination date only stopped the transfer of future claims – not claims already assigned.

### 4. <u>*Whether the La Ley Agreement was a Contingency Agreement*</u>

Defendant's final argument, in support of its position that Plaintiff lacks standing, is that the La Ley Agreement is merely a contingency-based agreement – as opposed to a true assignment – and that this fails to confer standing because the proceeds of a potential recovery can be shared with FHCP. That is, Defendant argues that, in circumstances where a party agrees to share a recovery with a second party who will pursue a recovery, the second party lacks standing to assert a claim. So, because the Lay Ley agreement contemplates a 50% return on any collections that La Lay, or its assignee, recovers with the other 50% returning to FHCP, Defendant concludes that Plaintiff has no standing to proceed with this case.

Defendant swings and misses again because the Supreme Court has expressly rejected the position that an assignment agreement with a recovery-sharing provision defeats assignee standing. In *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008), the Supreme Court considered whether an assignee of an injured party's claim for monies owed under the Federal Communications Act had constitutional standing to pursue that claim. In that case, the assignors were payphone operators, who were owed money by long-distance carriers. The amounts of money owed were small and the payphone operators found it useful to assign unpaid claims to "aggregators." In return for a fee, the aggregators agreed to pursue the payphone operators' claims against the carriers, by filing suit if necessary. The aggregators agreed to remit the proceeds of the suits (minus their fee) to the payphone operators. A group of aggregators who had taken assignments from about 1,400 payphone operators brought suit against AT&T, Sprint, and other carriers. AT&T then moved to dismiss, arguing that the aggregators had no standing to pursue these claims under Article III. AT&T's main argument was that – because the aggregators were assignees for the sole purpose of collection with no interest in the proceeds of the suits beyond the collection of their fee – they had insufficient interest to support Article III standing.

The Supreme Court undertook an extensive historical analysis of the history of assignments and concluded that the aggregators had Article III standing:

> [H]istory and precedent are clear on the question before us: Assignees of a claim, including assignees for collection, have long been permitted to bring suit. A clear historical answer at least

20

> demands reasons for change.  We can find no such reasons here, and
> accordingly we conclude that the aggregators have standing.

*Id*. at 275.  In addition, the Court concluded that, although the aggregators did not

originally suffer any injury, the payphone operators assigned their claims and

conferred Article III standing:

> Petitioners argue . . . that the aggregators have not themselves
> suffered any injury in fact and that the assignments for collection 'do
> not suffice to transfer the payphone operators' injuries.'  It is, of course,
> true that the aggregators did not originally suffer any injury caused by
> the long-distance carriers; the payphone operators did.  But the
> payphone operators assigned their claims to the aggregators lock,
> stock, and barrel.  And within the past decade we have expressly held
> that an assignee can sue based on his assignor's injuries.

*Id*. at 286 (citations omitted).

Since *Sprint Communications,* many defendants have continued to advance

the same argument as the one presented here, but we have not located a single case

where it has succeeded.  *See, e.g, Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900

(7th Cir. 2010) ("Indeed, a claim's assignee may sue even when the claim was

assigned for the purpose of collection[.]"); *MSPA Claims 1, LLC v. Allstate Ins. Co.*,

2019 WL 4305519, at *3 (N.D. Ill. Sept. 11, 2019) ("[T]he Supreme Court has

expressly rejected the argument that an assignee has no standing simply because

the assignment agreement contains a recovery-sharing provision.") (citing cases);

*Farmers Ins. Exch.*, 2018 WL 5086623, at *12 (rejecting defendant's argument that

assignment is contingency fee agreement that cannot confer standing); *MAO-MSO*

*Recovery II, LLC v. Mercury Gen.*, 2018 WL 3357493, at *6 (C.D. Cal. May 23, 2018)

("[T]he Court is unpersuaded that it is merely a contingency fee agreement that

does not convey standing to sue.  The idea that Plaintiffs will remit a portion of the proceeds back to SummaCare following reimbursement does not change the fact that SummaCare assigned its rights to Plaintiff.") (citation omitted).  Because the Supreme Court has expressly held that, an assignee has standing even if an assignment contains a recovery-sharing provision (i.e. a contingency agreement), Defendant's motion to dismiss Plaintiff's amended complaint for this reason should be **DENIED**.

### C.      *Whether Plaintiff's Amended Complaint Fails to State a Claim*

Defendant's next argument is that Plaintiff's amended complaint should be dismissed because it fails to state a claim.  Count one is a cause of action under 42 U.S.C. § 1395y(b)(3)(a) for Defendant's failure to provide a payment or other reimbursement as required under the MSP Act.  Defendant claims that count one is defective in at least two ways.  First, Defendant contends that the complaint fails to establish that FHCP made "a proper conditional payment," or that Defendant "failed to provide for primary payment or appropriate reimbursement."  [D.E. 61 at 13].  Defendant asserts that the complaint only alleges that FHCP paid $2,347.89 for P.M.'s medical expenses and that Defendant failed to reimburse FHCP's conditional payment.  Defendant states that these allegations fall short because a primary payer cannot be held liable under the MSPA until "it is, or should be, aware that Medicare has made a conditional primary payment."  42 C.F.R. § 411.24.  Because the amended complaint lacks any factual allegations suggesting that a recovery demand letter was ever sent to Defendant, that Defendant should have

been aware that a primary payment was ever made, or that Defendant otherwise failed to make a payment under 42 U.S.C. § 1395y(b)(3)(a), Defendant concludes that Plaintiff's failure to plead such knowledge requires dismissal.

Second, Defendant argues that count one should also be dismissed because Plaintiff fails to allege any facts to support the conclusory allegation that Defendant was P.M.'s primary payer and that Defendant had a "demonstrated responsibility" to pay.   Plaintiff's only shot at meeting this requirement comes from allegations that Defendant was P.M.'s primary payer "by virtue of a no-fault insurance policy," and that this "covered P.M. for the accident-related medical expenses."  [D.E. 55-1 at ¶¶ 8,12].  Yet, Defendant claims that this allegation is inadequate because, to demonstrate Defendant's obligation to pay, a pleading must present "an enforceable obligation such as a judgment or settlement." *Caldera v. Ins. Co. of the State of Pennsylvania*, 2012 WL 360183, at \*4 (S.D. Tex. Feb. 2, 2012).   Since no such allegation is presented in the amended complaint, Plaintiff demands that count one be dismissed for this additional reason.

### 1. *Whether Count One Fails to State a Claim*

Defendant's legal argument in support of its motion to dismiss count one is that Plaintiff failed to allege the required elements for a private cause of action under the MSP Act.  In our circuit, to state a claim under 42 U.S.C. § 1395y(b)(3)(a), a plaintiff must allege three elements: (1) the defendant's status as a primary plan, (2) the defendant's failure to provide for primary payment or appropriate reimbursement, and (3) the damages amount. *See Humana Med. Plan, Inc. v. W.*

*Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).  Defendant disagrees that these are the required elements to state a claim and chooses instead to follow a Second Circuit decision in *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 95 (2d Cir. 2017).  That is a dubious effort in the best of circumstances, but especially here where, though the Second Circuit mentioned the MSP Act a couple of times in that opinion, the holding in that case concerned claims filed *under the False Claims Act*.  It is also unclear how Defendant developed an entirely different set of pleading requirements for a § 1395y(b)(3)(a) claim when the Second Circuit did not even list the elements that Defendant relies upon its motion. It appears that Defendant merely referenced *Takemoto* and then developed its own set of elements based on its unique interpretation of the case.  Not very persuasive.

In any event, Defendant's argument for a different set of elements to state a claim under § 1395y(b)(3)(a) is doomed because the Eleventh Circuit has already made that point clear in a published opinion.  *See, e.g.*, *Humana Med. Plan, Inc.*, 832 F.3d at 1239 (listing the elements to state a  claim under § 1395y(b)(3)(a)); *see also Scottsdale Ins. Co.*, 352 F. Supp. 3d at 1238 (same).  So, to the extent there is an appellate court conflict (and we are highly doubtful that there is with respect to the decision in *Takemoto*) – we are bound to follow the Eleventh Circuit.

Defendant's second argument is that count one should be dismissed because Plaintiff failed to allege that it ever sent Defendant a recovery demand letter as required under the MSP Act. Defendant's position is again unpersuasive because Defendant fails to reference any cases or regulations that impose this requirement.

A case that is instructive on this point is the decision in *MSPA Claim I, LLC v. Nat'l Fire Ins. Co. of Hartford*, 2016 WL 11221049, at *6 (S.D. Fla. Sept. 26, 2016), *Report and Recommendation adopted*, *MSPA Claim I, LLC. v. Nat'l Fire Ins. Co. of Hartford*, 2016 WL 10706272 (S.D. Fla. Dec. 6, 2016).   In that case, the defendant made the same argument as the one presented and the Court found that "[n]either the cases nor the Code of Federal Regulations provision upon which the defendant relies support the defendant's position."   *Id*. at *7.   The court also determined that the plaintiff had alleged that the defendant had constructive knowledge that it was a primary payer under the MSP Act and that this was enough to survive a motion to dismiss.

The defendant took issue with that position and claimed that Title 42 of the Code of Regulations required the plaintiff to present a recovery demand letter.   But, the court found defendant's argument lacking because Sub-section 411.22(c) provides two options for a primary payer:

> (c) The primary payer must make payment to *either* of the following:
>
> (1) To the entity designated to receive repayments if the demonstration of primary payer responsibilities is other than receipt of a recovery demand letter from CMS or designated contractor.
>
> (2) As directed in a recovery demand letter.

42 C.F.R. 411.22(c) (emphasis added).   Because the plaintiff made payments and alleged that there was an underlying settlement agreement (i.e. a contract) to demonstrate defendant's responsibility for reimbursement, the court refused to allow the defendant "to impose additional pleading requirements on the plaintiff

that are not prescribed by the MSP Act or the regulations that govern the private cause of action." *Nat'l Fire Ins. Co. of Hartford*, 2016 WL 11221049, at *7.

The same reasoning applies in this case because we have found no authority that requires a plaintiff to send a defendant a recovery demand letter.  Instead, the MSP Act allows a plaintiff to survive a motion to dismiss if a defendant has constructive knowledge that it was a primary payer under the MSP Act.  And Plaintiff has met that requirement because Plaintiff alleges that there was an underlying insurance policy between P.M. and Covington that triggered Defendant's responsibility to pay.  [D.E. 55-1 at ¶ 47] ("Plaintiff's claim results from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues no-fault insurance policies and is thus a primary payer liable under the MSP Law.").  We therefore conclude that Defendant's second argument, as to count one, lacks merit.  *See MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458 (N.D. Ohio 2019) ("Based on a natural reading of the full text, the Court finds that § 1395y(b)(2)(B)(vi) does not create a statutory presentment requirement as a pre-condition to filing suit pursuant to § 1395y(b)(3)(A).").

Defendant's third argument, as to count one, is that Plaintiff fails to allege that Defendant had a demonstrated responsibility to pay as required to state a claim.  The MSP Act requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment

with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii).  The statute

explains how that responsibility may be demonstrated:

> [R]esponsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

*Id.*

This is commonly referred to as the demonstrated responsibility requirement

– meaning Medicare may obtain reimbursement from a primary plan if it

demonstrates that the primary plan "has or had a responsibility" to pay for the item

or service.  The implementing regulations under the MSP Act further specify that a

primary payer must reimburse Medicare "for any payment if it is demonstrated that

the primary payer has or had a responsibility to make payment." 42 C.F.R. §

411.22(a).  The regulations list the means by which responsibility for payment may

be demonstrated, including a judgment or "other means, including but not limited

to a settlement, award, or contractual obligation." *Id*. § 411.22(b).

Defendant claims that Plaintiff failed to meet the demonstrated

responsibility requirement because that can only be accomplished via a judgment or

a settlement.  The problem with Defendant's argument is that the Eleventh Circuit

already foreclosed this line of reasoning in *Allstate*.  There, the court found that the

phrase "by other means" in the MSP Act specifically includes a contractual

obligation under the law's implementing regulations.  *See Allstate Ins. Co.*, 835 F.3d

at 1361.  The court then examined the text of the MSP Act where it referenced the

use of settlements and waivers as a means of "demonstrating responsibility," and

reasoned that "a settlement agreement is just a type of contract." *Id*. The court also found that "[t]he plain language of the MSP Act indicates that at least some contractual obligations—namely, settlement agreements—are sufficient to demonstrate responsibility," and that there is "no reason that other types of agreements—such as insurance contracts—should be treated differently." *Id*. The Eleventh Circuit therefore held "that a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act." *Id*.

Here, Plaintiff alleges that Defendant is a primary payer because of the underlying insurance policies and that Defendant is responsible for the expenses that Plaintiff seeks to recover. [D.E. 55-1 at ¶ 12] ("Defendant is liable to pay this amount because it was P.M.'s primary payer by virtue of a no-fault insurance policy which covered P.M. for the accident-related medical expenses detailed herein."). Defendant maintains that Plaintiff must reference a judgment or settlement for Plaintiff's allegations to state a claim, but that position is untenable in light of the underlying regulations of the MSP Act and the Eleventh Circuit's decision in *Allstate* that allows for a contractual obligation to meet the demonstrated responsibility requirement. Therefore, Defendant's motion to dismiss count one for a failure to state a claim should also be **DENIED**. *See id*. ("We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement").

### 2. *Whether Count Two Fails to State a Claim*

Count two of Plaintiff's second amended complaint is a breach of contract claim under 42 U.S.C. § 411.24(e). Plaintiff alleges that its assignors are subrogated the right to recover primary payment for Defendant's breach of contract with its insured, pursuant to 42 C.F.R. § 411.26. More specifically, Plaintiff alleges that Defendant "failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations." [D.E. 55-1 at ¶ 64]. "This obligation was, instead, fulfilled by the Plaintiff's assignor and other Class Members," and "[u]nder the MSP Law, Plaintiff is permitted to be subrogated to the enrollee/insured's right of action against Defendant." *Id.*

Defendant argues that count two fails to state a claim because there is no private right of action under 42 U.S.C. § 411.24(e). Defendant's argument ignores the principle that "[w]here a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way." *Weber v. Seterus, Inc.*, 2018 WL 1519163, at *7 (N.D. Ill. Mar. 28, 2018) (internal citation omitted) (finding a private cause of action under an implementing regulation of RESPA). That is, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). This means that, when Congress created a right of action for CMS to sue primary payers for reimbursement or recovery of conditional payments in § 1395y(b)(3)(A), it also created a cause of action under its corresponding regulation. *See* C.F.R. § 411.24(e)

("Recovery from primary payers. CMS has a direct right of action to recover from any primary payer.").

Not surprisingly, this is not the first time that a defendant has presented this argument. Take, for example, a district court's decision in *Mao-Mso Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 3420796, at *8 (C.D. Ill. July 13, 2018). There, the court found that there was "no doubt that § 411.24, titled 'Recovery of conditional payments,' effectuate[d] the private cause of action under MSP." *Id*. The court noted that subsections (a) and (b) allows any entity that possesses information pertinent to a claim to release that information to CMS and that subsection (c) "explains the amount of recovery that CMS is entitled to when legal action is and is not required in order to recover." *Id*. The court also determined that "[n]ot only does § 411.24(e) have rights-creating language, but the entire regulation focuses on a beneficiary, CMS, and how CMS can pursue a remedy." *Id*. at *8 (citation omitted).

We agree with the court's reasoning in *Mao-Mso Recovery II, LLC* because Congress expressly created a right of action in the MSP Act and the statute's accompanying regulations include rights-creating language. Yet, Defendant contends otherwise here. But, like the defendant in *Mao-Mso Recovery II, LLC*, Covington fails to reference a single persuasive case to supports its position. *See id*. at 7 ("State Farm has presented no reasoning for why § 411.24(e), which states that 'CMS has a direct right of action to recover from any primary payer,' cannot also be enforced."). We therefore conclude that there is a private right of action under 42

U.S.C. § 411.24(e) and that Defendant's motion to dismiss count two for failure to state a claim should be **DENIED**.

In Defendant's reply, Covington claims that count two fails for an entirely separate reason because Plaintiff failed to allege that its assignors were parties or intended third-party beneficiaries of an insurance contract.  We need not consider this argument because "it is improper for a litigant to present new arguments in a reply brief, as [Covington] has done here."  *Brown v. CitiMortgage, Inc.*, 817 F. Supp. 2d 1328, 1332 (S.D. Ala. 2011); *see also Herring v. Secretary, Dep't of Corrections,* 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

However, putting aside Defendant's procedural failing, it still lacks merit because the MSP Act supersedes any state laws or other requirements that would otherwise apply:

> [T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans.  A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer.

42 C.F.R. § 422.108(f); *see also id.* § 422.402 ("The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations.").  Because state contract principles are preempted under the MSP Act, there is no requirement for Plaintiff to allege that it was a third-party

beneficiary to plead a breach of contract claim.  *See Mao-Mso Recovery II, LLC*, 2018 WL 3420796, at *9 ("[S]tate contract laws are likely preempted by the MSP Act to the extent they interfere with Plaintiffs' reimbursement rights.") (citing *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 196 (S.D.N.Y. 2012) (finding that New York's anti-subrogation statute was expressly preempted by Medicare Act as it applied to Medicare and MA organization reimbursement rights)).  Therefore, to the extent the Court even considers this argument, Defendant's motion to dismiss count two should be **DENIED**.

## D. <u>Whether Plaintiff's Class Allegations Should be Dismissed</u>

The final issue is whether the definition of Plaintiff's proposed class should be dismissed because it creates an improper fail-safe class.  A fail-safe class is "a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability."  *Rodriguez v. Countrywide Home Loans, Inc.,* 695 F.3d 360, 369–70 (5th Cir. 2012) (citation omitted); *accord Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012) (defining a fail-safe class as "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim").  Here, the proposed class is defined as follows:

> All Medicare Advantage Organizations (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:
>
> (1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the

policy of insurance of the same Medicare Beneficiaries; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations (or their assignees) for the items and services that were provided related to the claims of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

[D.E. 55 at ¶ 38].

Defendant argues that this constitutes a fail-safe class because, under Plaintiff's definition, the class includes claims of MAOs and their assignees where Defendant is the primary payer and failed to pay or reimburse. Defendant reasons that, under this definition, the merits of each claim would need to be decided prior to determining membership and that this classifies as a classic fail-safe class. Defendant also claims that Plaintiff's class definition is improper because it is not adequately defined or clearly ascertainable because a determination of who qualifies as a class member would require an individualized inquiry as to whether Defendant failed to pay or reimburse Plaintiff's assignors. Defendant suggests, for example, that a class action would require a long list of individualized determinations with respect to each claim and each bill that Defendant failed to pay. Because the class definition would require a succession of mini trials, Defendant concludes that this case is inappropriate for class action treatment and that these allegations must be dismissed.

"While it is sometimes possible to decide the propriety of class certification from the face of the complaint . . . the Supreme Court has emphasized that class certification is an evidentiary issue, and 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).   That is, "the determination usually should be predicated on more information than the complaint itself affords.   The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential[.]"   *Huff v. N.D. Cass Co. of Ala.,* 485 F.2d 710, 713 (5th Cir. 1973) (en banc) (internal citation and footnote omitted).[7]   After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."   *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011) (internal quotation marks omitted).

Notwithstanding these principles, Defendant requests that we dismiss Plaintiff's class action allegations because the class is not adequately defined or clearly ascertainable.   Here Defendant may have a stronger hand (in contrast to the preceding 32 pages).   But alas these more persuasive arguments are premature for at least two important reasons.   First, if the class definition is inadequate at the pleading stage, the Court retains the ability to refine it at a later stage in the litigation.   *See, e.g.*, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321

---

[7]      In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

F.R.D. 688, 696 (S.D. Fla. 2017) (and cases cited therein). *Cf. Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Second, Defendant's argument is more appropriate in opposition to a motion for class certification as opposed to a motion to dismiss because that gives each party an opportunity to present discovery or participate in an evidentiary hearing to determine whether a proposed class complies with Rule 23. *See, e.g., Smith v. Rainey*, 2011 WL 4352179, at *3 (M.D. Fla. Sept. 16, 2011) ("With respect to the sufficiency of Plaintiffs' class action allegations, the Court agrees with Plaintiffs that compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim."); *Nelson v. Quimby Island Reclamation Dist. Facilities Corp.*, 1978 WL 1059, at *2 (N.D. Cal. Feb. 3, 1978) (denying motion to strike class allegations in federal securities case, finding "Defendant does not contend that no class would be proper; rather, it objects to the dimensions of the class alleged by plaintiffs. Defendant's objections should be interposed when plaintiffs move to certify their classes.").

Defendant seeks to bypass this step and have the parties rely solely on the allegations in the complaint. But, that would defeat the purpose of a motion for class certification, especially in a case such as this one where there are complex questions of whether individual issues predominate. *See Daniel v. Navient Sols.,*

*LLC*, 328 F. Supp. 3d 1319, 1322–23 (M.D. Fla. 2018) ("An order on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements.") (citing cases).  We therefore agree with Plaintiff that the more prudent course is to defer these questions to when and if class certification is sought.  "[A]nd after appropriate class discovery, Defendant[] may assert any challenge [it] may have to class certification."  *Smith v. Rainey*, 2011 WL 4352179, at *3 (M.D. Fla. Sept. 16, 2011).  Accordingly, Defendant's motion to dismiss Plaintiff's class action allegations should be **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.  [D.E. 61].

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 12th day of

May, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge